**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                    CASE NO.  8:15-cv-2487-T-26JSS

ROBERT N. BEDFORD, LINDA J. BEDFORD,
DAWN THOMPSON POOL CARE, and
BB&T BANK,

    Defendants.

_____/


**O R D E R**

**BEFORE THE COURT** is the United States' Motion for Summary Judgment

(Dkt. 41), the Response of BB&T Bank (Dkt. 48), the Joint Stipulation of Lien Priorities

between the United States and Dawn Thompson Pool Care (Dkt. 49), the Response of

Linda J. Bedford (Dkt. 50), the Response of Robert N. Bedford with attachments (Dkt.

51), and the Government's Reply with attachments (Dkt. 54).  The *pro se* motions for

summary judgment (Dkts. 43 & 44), which this Court denied, will also be considered as

submissions "in addition to the responses" of Robert Bedford and Linda Bedford when

resolving whether the United States is entitled to summary judgment (Dkt. 45).  After

careful consideration of the motion, the applicable law, and all the submissions of the

parties, the Court concludes the motion should be granted.

## BACKGROUND

The Government brings this action to reduce to judgment unpaid federal income tax liabilities for Defendant Robert N. Bedford from 1999 through 2003, and for Defendant Linda J. Bedford from 1999 through 2001.  The Government seeks foreclosure of federal tax liens against the Bedford personal residence located in Pinellas County, Florida, which is now owned solely by Ms. Bedford, and also an order of sale.

### Federal Income Tax

The tax liability for the years 1999 through 2001 was initially assessed against both the Bedfords, having filed their tax returns jointly as a married couple during that time.  In February 2007, after the Bedfords petitioned the United States Tax Court to redetermine the deficiencies, the Bedfords stipulated to an amount owed for the years 1999 to 2001.[1]  The Secretary of the Treasury assessed federal income tax, penalties, and interest against both Robert and Linda Bedford for 1999 to 2001 as of November 4, 2013, in the amounts of $3,029.27, $67,914.91, and $26,530.79, for the years 1999, 2000, and 2001, respectively.

In 2009, Linda Bedford challenged the amount for the years 1999 through 2001 based on innocent spouse relief.  In January 2013, the matter was resolved when the Tax

---

[1]   The stipulated decision states that deficiencies in income tax were due in the amounts of $27,980.00 and $12,640.00, for the tax years 2000 and 2001, respectively, in addition to penalties in the amounts of $5,596.00 and $2,528.00.  See docket 41-4, pp. 13-15.

Court entered a stipulated order that assessed the amount she owed for the years 1999

through 2001.[2] Despite demand, Linda Bedford failed to remit payment. The stipulated

decision reduced the amount owed by Linda Bedford, but did not affect the amount owed

by Robert Bedford.

In addition to the years 1999 through 2001, Robert Bedford owes tax deficiencies,

penalties, and interest for the years 2002 and 2003, when he filed individual tax returns.

The Secretary of Treasury made assessments against him as of November 4, 2013, for

those two years in the amounts of $10,465.83 and $2,190.11, respectively. Demand for

payment was made. Mr. Bedford did not dispute the proposed deficiencies, and failed to

pay.

Robert and Linda were divorced on June 27, 2013. The federal tax liens were

recorded prior to the divorce. As of September 22, 2016, Robert Bedford owes

$113,668.97 for the years 1999 through 2003, plus uncalculated interest for 1999[3] and

other additions that continue to accrue as allowed by law. As of that same date, Linda

---

[2]   The stipulated decision provides that income tax deficiencies for the tax years
1999 through 2001 were due in the amounts of $4,089.00, $3,000.00, and $7,425.00,
respectively, and penalties for those years in the amounts of $817.80, $1,000.00, and
$1,264.00. See docket 41-4, pp. 103-104.

[3]   According to the declaration of Bryan Morris, an Internal Revenue Officer, the
calculation of the unpaid interest for the year 1999 cannot be accomplished automatically
by the system through the use of a code, and, therefore, a specialist within the agency has
been asked to make this calculation. See docket 41-4, para. 11.

Bedford owes $20,127.15 for the years 1999 through 2001, plus the uncalculated interest

for 1999 and the penalties and interest continuing to accrue.

### Liens

Federal tax liens as well as two other liens have attached to the personal residence

in Seminole, Florida, since the Bedfords acquired it in 1997. The tax liens were recorded

in the public records of Pinellas County, Florida, on March 23 and December 6, 2007,

against both Robert and Linda Bedford, and on August 15, 2011, against Robert, and on

August 16, 2013, against Linda.[4] A mortgage was recorded on the property by Republic

Bank on September 1, 1999, in the amount of $24,296.65.[5] BB&T Bank is the successor

in interest to Republic Bank. Dawn Thompson Pool Care (Thompson) recorded a claim

of lien in the amount of $643.64 on January 7, 2010, and again on October 10, 2011.[6]

The property was quitclaimed to Linda Bedford in the divorce in July 2013, which was

made subject to the tax liens, and she is now the sole owner.[7]

The Government now moves for summary judgment, and the *pro se* Bedfords

independently challenge the relief sought and contend that many genuine issues of

material fact exist to prohibit summary judgment.

---

[4] See dockets 41-4, para. 26 and 41-4, pp. 136-155.

[5] See dockets 41-4, para. 29 and 41-4, pp. 161-167.

[6] See dockets 41-4, para. 29 and 41-4, pp. 159-160.

[7] See docket 41-4, p. 157.

## SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted where there is no genuine dispute regarding a material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).  The facts must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 474 U.S. 574, 587-88, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986).  If the Court determines the moving party has met its burden, then the burden shifts to the non-moving party to show there is a genuine issue of material fact for trial. Matsushita, 474 U.S. at 587. The non-moving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact."  United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (quoting Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1477 (11th Cir. 1991)).

## ANALYSIS

The Government argues that the undisputed facts show that Robert and Linda Bedford owe tax deficiencies, penalties, and interest in the amounts set forth in the declarations as noted above.  It is uncontested that BB&T Bank's lien has priority over all tax and other liens.  It is stipulated between Thompson and the Government that the order of satisfaction pursuant to a sale of the property, apart from BB&T, is as follows: (1) the tax liens for the years 1999-2003 recorded before January 7, 2010; (2) the claim of lien by

Thompson filed January 7, 2010, over the tax lien for 2000 and 2001 filed August 15, 2001; and (3) the claim of lien by Thompson filed October 10, 2011, over the tax lien for 2000-2001 filed August 16, 2013.[8]

Neither of the Bedfords contested the final assessments as evidenced in the account transcripts attached to the declaration of Bryan Morris, which are consequently presumed valid.  See, e.g., Welch v. Helvering, 290 U.S. 111, 115 (1933); United States v. Chila, 871 F.2d 1015, 1018 (11th Cir. 1989), cert. denied, 493 U.S. 975 (1989); United States v. Enright, No. 8:14-cv-2189-T-30JSS, 2015 WL 5883166, at *3 (M.D. Fla. Oct. 6, 2015); United States v. Dixon, 672 F.Supp. 503, 506-07 (M.D. Ala. 1987), aff'd, 849 F.2d 1478 (11th Cir. 1988).  In addition to the transcripts, the stipulated decision of the Tax Court regarding the 1999 to 2001 tax liabilities is further proof.[9]  The Bedfords have not carried their burden of overcoming the presumption of validity of the tax assessment by challenging its correctness or the method of computing the tax.  See Olster v. Comm'r, 751 F.2d 1168, 1174 (11th Cir. 1985) (citing Mersel v. United States, 420 F.2d 517, 520 (5th Cir. 1969)); Dixon , 672 F. Supp. at 506.[10]  The Bedfords incorrectly assert that the

---

[8]   See docket 49, para. 6.

[9]   Both the Bedfords assert that the tax liabilities for the years 1999 through 2001 "were written off."  They misread the transcripts, however, as explained in Mr. Morris' declaration.  Once the innocent spouse claim was filed, the MFT 30 account transcripts are disregarded, and new MFT 31 transcripts are generated for each individual spouse. See docket 41-1, para. 11.

[10]   See also United States v. Lena, 370 F. App'x 65, 70 (11th Cir. 2010) (unpublished opinion).

account transcripts are inaccurate with respect to overpayment of $759.02 by Mr. Bedford

for the tax year 2009.  Mr. Morris explains in his supplemental declaration that the

overpayment was properly applied to the tax year 2001 as $403.02 on February 22, 2011;

$156.00 on April 15, 2011; and $200.00 on March 13, 2012.[11]  Absent any evidence that

the tax assessments were arbitrary and without foundation or incorrect, the assessments

are valid and enforceable.  See United States v. Henry, No. 8:09-cv-1963-T-27TBM,

2010 WL 299249, at *2 (M.D. Fla. Jan. 21, 2010).

Each of the Bedfords separately raise additional issues not directed to the

correctness and validity of the assessments.  They suggest that the Government should be

estopped from collecting the tax based on their good faith that they did not owe any taxes.

Claiming that this is the first time they have seen the correct transcripts showing the

amounts due, the Bedfords contend that the transcripts in their possession show amounts

written off, refunded, and transferred out.  Mr. Morris' declaration explains that entries

showing amounts transferred out refers to the October 2009 adjustment for Ms. Bedford's

---

[11]   See dockets 54-1, paras. 3-7 and 41-1, p. 24 as reflected by code 706.

innocent spouse claim.[12]  New transcripts were generated showing the new balance due

for each of the Bedfords.

*Estoppel*

Equitable estoppel requires "(1) 'words, acts, conduct or acquiescence causing

another to believe in the existence of a certain state of things' (2) 'wilfulness or

negligence with regard to the acts, conduct or acquiescence' and (3) 'detrimental reliance

by the other party upon the state of things so indicated.'"  Tefel v. Reno, 180 F.3d 1286,

1302 (11th Cir. 1999) (quoting Federal Deposit Ins Corp. v. Harrison, 735 F.2d 408, 413

(11th Cir. 1984)).  Apart from proving these elements, the Bedfords may not rely on

equitable estoppel against the Government without establishing that it acted in its private

---

[12]   See docket 41-1, para. 10.  Mr. Morris avers as follows:
          When an individual files an innocent spouse claim the MFT
          30 assessments are abated and a new set of transcripts for
          each individual spouse is generated.  Exhibit D reflects a code
          971 "Innocent spouse claim received" on September 4, 2009,
          a subsequent code 400 "Transfer Out" on October 12, 2009,
          and a code 971 "Balance transferred to split liability" on
          November 2, 2009.  The new transcripts created when the
          balance is transferred out are coded "MFT 31."  Following
          transfer the MFT 30 transcripts reflect a $0 balance. [citation
          omitted.] The transcripts included as Exhibit B, titled "1040
          Separate Assessment," are MFT 31 transcripts generated and
          reflect the taxes assessed and owed solely as to Mr. Bedford .
          . .[His] tax liabilities for tax years 1999 to 2001 were not
          written off by the IRS.

With respect to Ms. Bedford, he explains that the MFT 31 transcripts demonstrate that her
tax liabilities for the years 1999 to 2001 were not written off.   See docket 41-1, para. 23.

or proprietary capacity.  See Mendez v. United States, No. 02-60857-Civ, 2003 WL

23309467, at *4 (S.D. Fla. Dec. 15, 2003).  Because the activities of "[p]romulgating,

interpreting and enforcing tax laws are sovereign functions" and not conducted for private

or commercial benefit, the Bedfords cannot establish equitable estoppel on the part of the

Government in recovering tax assessments.  United States v. Qurashi, No. 8:03-cv-1002-

T-27EAJ, 2004 WL 1771071, at *2 (M.D. Fla. June 16, 2004).

The Bedfords contend that they relied on the account transcripts received from the

Internal Revenue Service (IRS) in 2014 "at face value" concerning their interpretation of

what was due.[13]  Mr. Bedford conceded that he never tried to speak with anyone at the

IRS regarding the transcripts.[14]  As explained by Mr. Morris, the innocent spouse claim

resulted in a regeneration of transcripts from the code "MFT 30" to "MFT 31."  Only the

MFT 30 balance is zero because the balance was transferred to the MFT 31.  Ms. Bedford

also raises reliance on the CP49 issued February 11, 2013, to establish that the balance

was fully paid.[15]  The CP49 merely shows that a part of the 2011 overpayment was

applied to the tax owed for the tax year 1999.

---

[13]   See dockets 50 & 51 at para.3.

[14]   See docket 41-5, p. 10 (deposition excerpt).

[15]   See docket 51-11 (CP49 dated Feb. 11, 2013, showing no refund due and overpayment was applied to the tax year 1999 in the amount of $177.32).

The Bedfords further contend that they relied on lack of notice under 26 U.S.C. § 7524.[16]   The documents attached to Mr. Morris' original declaration shows at the entry dated November 4, 2013, that notice of their 2013 tax liabilities was sent.[17]   Their case was referred to the Department of Justice in 2014 and this litigation was filed in 2015; therefore, no notices were sent after 2013.   In any event, § 7524 does not provide a private right of action to enforce the failure to send annual notice.   Cf. Alexander v. Sandoval, 532 U.S. 275, 286, 121 S.Ct. 1511, 1519, 149 L.Ed.2d 517 (2001) ("[P]rivate rights of action to enforce federal law must be created by Congress.").

*Additional Discovery Needed*

The Bedfords urge this Court to permit the reopening of discovery to depose Mr. Morris and a senior attorney with the IRS, Mr. McMahan, ostensibly pursuant to Federal Rule of Civil Procedure 56(d).   Discovery closed on August 29, 2016.[18]   The Bedfords have wholly failed to justify under Rule 56(d) the need to depose two key government employees after the discovery deadline passed.   Mr. Morris was disclosed in the Government's initial disclosures as well as in its response to Mr. Bedford's request for

---

[16]   Section 7524 provides: "Not less often than annually, the Secretary shall send a written notice to each taxpayer who has a tax delinquent account of the amount of the tax delinquency as of the date of the notice."

[17]   See docket 41-4, ("Notice issued CP0710").

[18]   See docket 29 (Case Management and Scheduling Order).

production of documents.[19]  The Bedfords never sought to depose Mr. Morris before the

close of discovery, nor filed any motion to compel any incomplete discovery response.

See, e.g., Kosher v. Protective Life Corp., 649 F.App'x 774 (11th Cir. 2010) (holding that

nonmovant must show by affidavit how additional discovery will permit it to present an

essential opposition, and why having had ample time and opportunity to complete

discovery, the nonmovant failed to pursue options).  The Bedfords have failed to show

good cause for extending discovery at this late date and to show how further questioning

of Mr. Morris would bolster their opposition to summary judgment.

The Bedfords wish to depose Mr. McMahan regarding the authorization to file this

suit.  Again, the Bedfords have failed to show how the authorization letter to file this

lawsuit, which most certainly would contain attorney-client privileged information, would

enable them to present a better defense to the summary judgment.  The Government

preserved its objections to produce the unredacted suit referral letter from the Chief

Counsel of the Tax Division, and the Bedfords never filed a motion to compel.[20]

*Procedures of the IRS*

The Bedfords take issue with the IRS' failure to follow its own manual, the

Internal Revenue Manual (IRM).[21]  The procedures found in the IRM, however, do not

---

[19]  See dockets 54-3 and 54-4.

[20]  See docket 54-4.

[21]  See dockets 51, p. 3, paras. 4-5, and 50, paras. 13-14.

bestow rights on taxpayers to enforce compliance.  In re Wood, 328 B.R. 880, 888 (S.D.

Fla. Bankr. 2005).  In any event, the provisions noted by the Bedfords deal with

administrative seizures of property as opposed to foreclosing liens.  See United States v.

Met. Life Ins. Co., 691 F.Supp. 1339, 1341 (S.D. Ala. 1988) (explaining the difference

between a lien foreclosure suit and collection by administrative levy).

The Bedfords contend that the Government incorrectly applied 26 U.S.C. § 6321,

which provides that a lien arises when a person neglects or refuses to pay a tax liability.

The Bedfords argue that their past payments to reduce the tax liability prevent the

Government from enforcing the liens.  They have not paid the liens in full by any means,

as shown by the account transcripts.  The Bedfords have not satisfied the tax liens as

required by § 6322,[22] and, therefore, § 7403 allows this suit to enforce the liens.

The Bedfords have also failed to assert any enforceable rights under Florida law or

their divorce decree.  The tax liens attached to the real property before the divorce decree

of 2013.  Tax liens cannot be extinguished by a transfer or conveyance of property.  See

United States v. Rodgers, 461 U.S. 677, 691 n. 16, 103 S.Ct. 2132, 2140 n. 16, 76

L.Ed.2d 236 (1983).  Florida's constitutional homestead exemption does not override

federal tax liens.  Fla. Const. Art. X, § 4(a) (1) ("There shall be exempt from forced sale .

. .and no judgment . . . shall be a lien thereon, except for the payment of taxes and

---

[22]   26 U.S.C. § 6322, titled Period of lien, provides liens "arise at the time
assessment is made and shall continue until the liability for the amount so assessed . . . is
satisfied . . ."

assessments thereon, . . . a homestead"); <u>United States v. Pegg</u>, No. 16-60289-Civ, 2016

WL 5234616, at *2 (S.D. Fla. Sept. 22, 2016).

It is therefore **ORDERED AND ADJUDGED** that United States' Motion for

Summary Judgment (Dkt. 41) is **GRANTED**.   The Government is directed to confer

personally with the lien holders and to file a proposed judgment of foreclosure and order

of sale within ten (10) days.  Any objections to the proposed judgment and order must be

filed within five (5) days thereafter.  The Clerk is directed to close this case with the

Court specifically reserving jurisdiction to enter a judgment of foreclosure and order of

sale.

**DONE AND ORDERED** at Tampa, Florida, on November 10, 2016.


      s/*Richard A. Lazzara*
      **RICHARD A. LAZZARA**
      **UNITED STATES DISTRICT JUDGE**


<u>COPIES FURNISHED TO</u>:
Counsel of Record